IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00354-CV

 

Paul Smith,

                                                                                    Appellant

 v.

 

Colonial Group, Inc.,

                                                                                    Appellee

 

 

 



From the County Court
at Law

Ellis County, Texas

Trial Court No. 03-C-3499

 



MEMORANDUM  Opinion



 

Paul Smith and Colonial Group, Inc. entered
into a contract for the repair and renovation of an historic home owned by
Smith.  After additions and change orders, the project’s total cost was
$43,832.77.  Colonial Group began the work, but after several months passed,
Smith ordered Colonial Group off the project and attempted to terminate the
contract before its completion.  Colonial Group sued Smith for the balance due ($23,524.60)
and attorney’s fees, and Smith counterclaimed for damages and offsets.  Colonial
Group inspected the home and offered a $4,648 offset against the balance.  After
a bench trial, the trial court largely found for Colonial Group, entering
judgment against Smith for $17,037.84.  Smith appeals the judgment, asserting
four issues.  We will reform the judgment in part and affirm the judgment as
reformed.

Smith’s first and second issues assert
that the trial court erred in finding an ambiguity in the contract relating to
the home’s brick-pier foundation, in concluding that the parties’ true intent
was to incorporate but not exclusively use the existing antique brick piers,
and in failing to award Smith $13,188 in damages for Colonial Group’s failure
to use the existing brick.  In leveling the foundation, Colonial Group removed
many of the existing brick piers and installed numerous block and pad supports
without Smith’s express approval.

The construction of a written contract,
including whether the contract is ambiguous and the parties’ true intent, are
questions of law reviewed de novo.  Fox v. Parker, 98 S.W.3d 713, 719
(Tex. App.—Waco 2003, pet. denied).  The court also views the contract in light
of the circumstances present when the contract was entered.  See National
Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995).  Each part of the contract is considered against all other parts to determine
its meaning, and we presume the parties intended every part to have some
effect.  Heritage Resources, Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996).  If express wording in the contract is subject to two or more reasonable
interpretations, the contract is ambiguous.  Fox, 98 S.W.3d at 719.  If
the court finds the contract ambiguous, it determines the true intentions of
the parties to resolve the ambiguity.  Id.  This determination involves
fact issues, and parol evidence may be introduced to discern the parties’
intent.  Id. at 719-20.

In the contract’s “Foundation” section,
the first two items are:

 

1)     
Use existing brick
foundation and owner assumes liability.

2)     
Leveling of
foundation.

 

Additionally, the payment schedule in
another part of the contract provides:  “3) Leveling with new pads and beams as
needed.”

We agree with Colonial Group that the contract’s
provisions on repairing and leveling the foundation are ambiguous.  Colonial
Group could not have exclusively used the existing brick piers to level the
foundation and used new pads and beams as needed for leveling.  We
overrule Smith’s first issue.

Legally and factually sufficient
evidence supports the trial court’s finding[1]
that the true intent of the parties—and the most reasonable interpretation of
the contract—was for Colonial Group to incorporate the existing brick piers as was
reasonable and practicable in leveling the foundation.[2] 
That evidence, which includes reasonable inferences therefrom, is:  (1) Smith
could easily have written the contract to provide for exclusive use of
the existing brick; (2) there was no separate pricing for additional antique
bricks, nor was there testimony about discussions on refurbishing the brick
piers or procuring special brick; (3) the cost to level the foundation would
have been much higher if the existing brick piers were to be used exclusively;
(4) Brad Yates of Colonial Group, who crawled under the house and inspected and
photographed the foundation work, said that using block and pad supports was
the best way to level the foundation; (5) Yates disputed Smith’s claim that 74
of the original 77 brick piers had been removed and pointed out Smith’s
inaccurate measurements and assumptions about the bricks; (6) while Smith said
he told Yates to use only the existing brick, there was no testimony of
substantive discussions between Smith and Yates on this, nor was there
corroborating evidence; (7) Smith never personally inspected the interior brick
piers; and (8) Smith waited until two years after Colonial had left the job
site to raise the issue.  We overrule issue two.

In issue three, Smith complains that
ten of the trial court’s findings or non-findings (failures to find) are
erroneous as a matter of law or are against the great weight and preponderance
of the evidence, or that they are not supported by legally and factually
sufficient evidence.[3]

We address the ten findings or
non-findings as follows:

1.  Bathroom wall sconce:  Smith claims
that he was entitled to a $252 offset ($225 plus 12% overhead and profit) because
he was charged for the installation of a wall sconce, but it was not done.  Smith
testified that he asked for a quote for a sconce, but Colonial Group did not install
it.  Colonial Group did not offer any evidence on this point.  Smith
conclusively established that he is entitled to this $252 offset.

            2.  Installation of tin
around foundation:  Smith claims that he is entitled to a $655 offset ($585
plus 12% overhead and profit) because Colonial Group did not fully install new
tin on the south side or replace the tin on the west side.  Colonial Group
refused to give an offset for this complaint, stating that it completed the
south side, Smith would not allow completion of the west side, and it had a
cost of $340 plus labor.  This evidence is legally and factually sufficient to
support the trial court’s refusal to award this offset.

3.  32-foot girder:  Smith claims that
he was entitled to a $580 offset ($518 plus 12% overhead and profit) because he
was charged for the installation of two 32-foot girders, but he said one of
them was not installed; it was left in the front yard.  Colonial Group did not
offer any evidence on this point.  Smith conclusively established that he is
entitled to this $580 offset.

4.  Unapproved plumbing to the attic: 
Smith claims that he was entitled to a $560 offset ($500 plus 12% overhead and
profit) because he was charged for running plumbing to the attic.  Smith said
he had asked for, but was never given, a quote for this work, yet Colonial
Group did it without his approval.  Colonial Group did not offer any evidence
on this point.  Smith conclusively established that he is entitled to this $560
offset.

5.  Buckled flooring:  Smith claims
that he was entitled to a $750 credit (an offset) for correcting the buckled
floors in three rooms.  Smith and his expert testified that four rooms had
buckled floors, which his expert attributed to the foundation-leveling work. 
Colonial Group had offered a $250 credit for buckling in only one room.  Colonial
Group did not offer any evidence on this point.  Smith conclusively established
that he is entitled to this $750 credit for the other three rooms.

6.  Re-hanging three doors:  Smith
claims that he was entitled to a $560 total credit (an offset) for re-hanging four
doors.  Colonial Group, which had removed one door but had not re-hung it, had
credited Smith $140 ($125 plus 12% overhead and profit) for one door that it
had not re-hung.  Smith claimed that three other doors had not been properly
re-hung by Colonial Group and needed re-hanging.  Colonial Group inspected the
three doors and found them to be plumb.  The evidence does not conclusively
establish that they needed re-hanging, and the evidence supporting this implied
finding is not against the great weight and preponderance of the evidence.

7.  Improper glazing of windows:  Smith
claims that the trial court erred in awarding only $330 as an offset for damages
caused by Colonial Group’s improper glazing of windows.  Colonial Group
admitted that it had not completed the glazing, yet it charged Smith for the
entire job.  Also, there was testimony that glazing was improperly performed by
using caulk instead of putty.  Colonial Group had given a $575 offset, but
Smith said that twenty-two of the windows needed to be re-glazed at $30 per
window, for a total of $660.  Colonial Group does not contest Smith’s version
of the evidence.  The trial court awarded only half of that amount ($330). 
Because Smith conclusively established his entitlement to all of the $660, he
is entitled to an additional $330 offset for glazing.

8.  Unauthorized removal of siding: 
Smith claims that Colonial Group removed approximately 320 sq. ft. of siding
from the back porch without authorization.  Yates confirmed that this siding
was removed to do the plumbing to the attic that is discussed in item 4 above. 
Smith presented evidence that the cost of this siding was $499.  Having held that
Smith conclusively established that he was entitled to an offset for the
unauthorized plumbing to the attic, we likewise hold that Smith conclusively
established that he is entitled to a $499 offset for the siding.

9.  Failure to install drywall on back
porch:  Smith claims that he was entitled to a $372 offset (rather than
Colonial Group’s offer of $150, which the trial court credited to Smith)
because Colonial Group failed to install 210 sq. ft. of drywall on the back
porch.  Smith offered evidence that the reasonable estimate for the cost of
this drywall was $372, and Colonial Group points to no controverting evidence. 
Because Smith conclusively established his entitlement to a $372 offset, he is
entitled to an additional offset of $222.

10.  Offset for failure to level the
house:  Smith asserts that, if he does not recover on his claim that the
antique brick piers should have been used to level the foundation (which he
does not), he should recover the cost to re-level the foundation (which he
asserts is $4,250) to correct damage caused by Colonial Group’s leveling.  Smith’s
expert, Allen, testified without objection that Colonial Group’s foundation
leveling had damaged the house in a few respects and that he had repaired that
damage, but he did not say that the foundation needed to be re-leveled, which
is Smith’s complaint on appeal.  Smith points to no other evidence that the
foundation needs to be re-leveled.  Smith has thus not conclusively established
that the foundation needs re-leveling and that he is entitled to an offset for the
cost of re-leveling, and the evidence supporting the trial court’s implied
finding that the foundation does not need re-leveling is not against the great
weight and preponderance of the evidence.

In summary, we hold that Smith is
entitled to additional offsets totaling $3,193 from the balance sued for by Colonial
Group.  We will thus reduce the amount of Colonial Group’s actual damages of
$10,269.77 as found by the trial court (after offsets awarded by the trial
court) by $3,193 and hold that Colonial Group shall recover actual damages from
Smith in the amount of $7,076.77.[4]

Smith’s fourth issue is that the trial
court’s award of attorney’s fees to Colonial Group should be proportionately
reduced in light of any offsets awarded on appeal.  We agree.  The trial court
awarded Colonial Group its attorney’s fees in proportion to its recovery at
trial ($10,269.77) against the amount it had originally sued for ($18,876.60). 
We will use that method to recalculate Colonial Group’s attorney’s fees, and we
find that it should recover 37.5% ($7,076.77 divided by $18,876.60) of its
attorney’s fees.

Colonial Group’s attorney’s fees in the
trial court were $10,188.  We therefore find that Colonial Group is entitled to
37.5% of that amount, which is $3,820.50.  The trial court also awarded
Colonial Group $2,500 in attorney’s fees in the event of an appeal, and we
award Colonial Group that amount.

In conclusion, we modify the trial court’s
judgment to find that Colonial Group shall recover from Smith the sum of
$7,076.77 in actual damages, prejudgment interest thereon in the amount of $1,927.41,[5] $3,820.50 for attorney’s fees in the
trial court, and $2,500 for attorney’s fees on appeal.  As modified, the
judgment is affirmed.

 

 

 

BILL VANCE

Justice

 

Before
Justice Vance, 

Justice Reyna, and 

Judge Stephen Ellis[6]

Affirmed
as modified

Opinion
delivered and filed October 25, 2006

[CV06]









[1]               We agree with Smith that
the trial court’s written “ruling” was its findings of fact and conclusions of
law.  The trial court and both parties treated the ruling as such in the trial
court; we likewise will.

 





[2]           In reviewing the legal
sufficiency of the evidence, we view the evidence in the light favorable to the
trial court’s finding, crediting favorable evidence if a reasonable factfinder
could, and disregarding contrary evidence unless a reasonable factfinder could
not.  City of Keller v. Wilson, 168 S.W.3d 802, 807, 822 (Tex. 2005).  There is legally
insufficient evidence or “no evidence” of a vital fact when (a) there is a
complete absence of evidence of a vital fact; (b) the court is barred by rules
of law or of evidence from giving weight to the only evidence offered to prove
a vital fact; (c) the evidence offered to prove a vital fact is no more than a
mere scintilla; or (d) the evidence conclusively establishes the opposite of
the vital fact.  Merrell Dow
Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997).  More
than a scintilla of evidence exists when the evidence supporting the finding,
as a whole, “rises to a level that would enable reasonable and fair-minded
people to differ in their conclusions.”  Id. (quoting Burroughs Wellcome Co. v. Crye,
907 S.W.2d 497, 499 (Tex. 1995)).

When the party without
the burden of proof at trial complains of the factual sufficiency of the
evidence to support an adverse express or implied finding, we must consider and
weigh all of the evidence, not just the evidence that supports the verdict.  Maritime
Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex. 1998); Checker Bag
Co. v. Washington, 27 S.W.3d 625, 633 (Tex. App.—Waco 2000, pet. denied). 
We will set aside the finding only if it is so contrary to the overwhelming
weight of the evidence that the finding is clearly wrong and unjust.  Ellis,
971 S.W.2d at 407.  Reversal can occur because the finding was based on weak or
insufficient evidence or because the proponent's proof, although adequate if
taken alone, is overwhelmed by the opponent's contrary proof.  Checker Bag,
27 S.W.3d at 633.





[3]               When the party that
had the burden of proof at trial complains of legal insufficiency of an adverse
finding, that party must demonstrate that the evidence establishes
conclusively, i.e., as a matter of law, all vital facts in support of
the finding sought.  Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001).  We first examine the record for evidence supporting the adverse finding,
ignoring all evidence to the contrary.  Id.  If more than a scintilla of
evidence supports the adverse finding, our inquiry ends.  Id.  “More
than a scintilla of evidence exists where the evidence supporting the finding,
as a whole, rises to a level that would enable reasonable and fair-minded
people to differ in their conclusions.”  Burroughs Wellcome Co. v. Crye,
907 S.W.2d 497, 499 (Tex. 1995) (citations omitted).

When the party
complaining of the factual sufficiency of the evidence had the burden of proof
at trial, it must demonstrate that the adverse finding is contrary to the great
weight and preponderance of the evidence.  Francis, 46 S.W.3d at 242. 
We weigh all the evidence, and we can set aside the adverse finding only if it
is so against the great weight and preponderance of the evidence that it is
clearly wrong and unjust.  Id.  In doing so, we must detail the evidence
and state in what regard the contrary evidence greatly outweighs the evidence
in support of the adverse finding.  Id.





[4]               Based on the total
monetary amount that Smith seeks in the appeal and the additional offsets that
we have found he is entitled to, we find that Colonial Group is the prevailing
party in this appeal.





[5]               We calculate prejudgment
interest under section 304.104 of the Texas Finance Code and award prejudgment
interest from the date suit was filed (July 8, 2003) to the date of our
judgment (October 25, 2006).  See Tex.
Fin. Code Ann. § 304.104 (Vernon 2006).  The current judgment interest
rate is 8.25%.  (See http://www.occc.state.tx.us/pages/int_rates/Index.html)
(last visited Oct. 17, 2006).  Prejudgment interest is calculated by the formula P x R x
T = I, where P is the amount of actual damages ($7,076.77), R is the interest rate (.0825), T is the
time (1,205 days divided by 365 days = 3.3013 years), and I ($1,927.41)
is the prejudgment interest award.  See Texas Farmers Ins. Co. v.
Cameron, 24 S.W.3d 386, 400 & n.5 (Tex. App.—Dallas 2000, pet. denied).

 





[6]               Judge of the 35th District
Court of Brown and Mills Counties, sitting by assignment of the Chief Justice
of the Texas Supreme Court pursuant to section 74.003(h) of the Government
Code.  See Tex. Gov't Code Ann.
§ 74.003(h) (Vernon 2005).